UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN L. WOODS,

                Petitioner,

                                      Case No. 20-cv-662-pp

    v.

DAN CROMWELL,[1]

                Respondent.

---

**ORDER DENYING MOTION TO PROCEED WITHOUT PREPAYING FILING
FEE (DKT. NO. 3), DENYING WITHOUT PREJUDICE REQUEST FOR
APPOINTMENT OF COUNSEL (DKT. NO. 5), SCREENING PETITION (DKT.
NO. 1) AND ORDERING PETITIONER TO PAY FILING FEE**

---

On April 27, 2020, the petitioner, an inmate at Redgranite Correctional
Institution who is representing himself, filed a petition for writ of *habeas corpus*
under 28 U.S.C. §2241. Dkt. No. 1. The petitioner has not paid the $5.00 filing
fee. With his petition, the petitioner filed a "memorandum of law in support,"
dkt. no. 2, a motion to proceed without prepaying the filing fee, dkt. no. 3, a
trust fund account statement, dkt. no. 4, and a request for appointment of
counsel, dkt. no. 5. This order addresses the outstanding motions and screens
the petition.

---

[1] Under Rule 2 of the Rules Governing Habeas Cases, "[i]f the petitioner is
currently in custody under a state-court judgment, the petition must name as
respondent the state officer who has custody." The petitioner is an inmate at
Redgranite Correctional Institution. https://appsdoc.wi.gov/lop/home.do. This
order reflects Warden Dan Cromwell as the respondent.

1

## I.    Motion to Proceed Without Prepayment of Fees (Dkt. No. 3)

There is a $5.00 filing fee for filing a *habeas* petition. 28 U.S.C. §1914(a). The petitioner asked the court to allow him to proceed without prepaying that fee. Dkt. No. 3. Section 1915(a)(1) of Title 28 allows a court to authorize the commencement of a lawsuit without prepayment of the filing fee if the person "submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." The petitioner's request indicates that the petitioner has no assets—no bank account, no retirement account, no investments, no real estate and no valuable other assets. Id. at 2. His trust account statement shows that as of April 22, 2020, the petitioner had a balance of $6.78 in his regular trust account and an end balance of $654.91 in his release account. Dkt. No. 4.

A release account is an account into which a percentage of an inmate's income is deposited so that when he is released from custody, he will have sufficient funds to buy clothes, obtain transportation and obtain other things he will need when released. Wis. Admin. Code § DOC 309.02(18). Judges in this district generally do not require a prisoner to pay initial partial filing fees in civil cases, or filing fees in *habeas* cases, out of their release accounts unless they ask to do so. Doty v. Doyle, 182 F.Supp.2d 570, 751 (E.D. Wis. 2002). The petitioner has not asked the court to allow him to pay the $5.00 *habeas* filing fee out of his release account. Given the facts that the petitioner had over $650 in his release account as of April 2020, that he likely has accrued a larger balance since then and that the Wisconsin Department of Corrections inmate

2

locator web site indicates that his mandatory release date is September 28, 2022 with a maximum discharge date of September 28, 2032, the court cannot conclude that the petitioner is unable to pay a $5.00 filing fee.

The court will deny the petitioner's motion and give him a deadline by which to pay the $5.00 filing fee. If the petitioner does not have the funds in his regular trust account and wants to pay that fee out of his release account, he may file a short motion, asking the court to authorize the Redgranite business office to pay the $5.00 fee out of the release account. If the plaintiff does not pay the $5.00 filing fee by the deadline the court sets, or ask for more time to do so, the court will dismiss the case.

## II.    **Rule 4 Screening**

A.    <u>Background</u>

Under Subsection II(A)—the "SUBJECT OF THIS APPLICATION" Section of the §2241 petition that asks the petitioner to indicate "the type of decision or action that [he is] challenging"—the petitioner marked the box for "Other." Dkt. No. 1 at 2. The petitioner states that he is in custody after being convicted and sentenced for "possession of a firearm by a convicted felon" and "revocation of supervised release." <u>Id.</u> at 5. Listing "U.S. Courthouse Danville, Danville, Illinois,[2] U.S. Courthouse Milwaukee, Milwaukee, Wisconsin" as the names and

---

[2] There is no United States courthouse in Danville, Illinois. The federal judicial district for the Central District of Illinois has locations in Peoria, Urbana, Springfield and Rock Island. The transfer of jurisdiction form transferring jurisdiction of the petitioner's supervised release from the Central District of Illinois to the Eastern District of Wisconsin indicates that the judge who transferred jurisdiction, Judge Harold A. Baker, sat in the Urbana Division. <u>United States v. Woods</u>, Case No. 06-cr-29 at Dkt. no. 1.

locations of the courts that imposed sentence, the petitioner cites case numbers "91-20039" and "06-CR-29;" dates of conviction "11-12-91" and "7-1-2008;" dates of sentencing "1-28-92" and "7-1-2008," and sentence lengths of "180 months, 60 months." Id. He references three Seventh Circuit appeals—Appeal Nos. 92-1314, 95-2687 and 08-2687. Id.

In an attached memorandum of law, the petitioner explains that his

[i]nstant offense was committed on June 13, 1990, however [the petitioner] was not arrested until August 21, 1991. During this time [the petitioner] was charged with a drug crime on July 27, 1990 and later convicted.

Dkt. No. 2 at 3.

This court's records confirm that the petitioner was a defendant in United States v. Steven L. Woods, Case No. 06-cr-29-JPS (E.D. Wis.). He had been charged and convicted in Case No. 91-20039-001 in the federal court in the Central District of Illinois of being a felon in possession of a firearm with an armed career criminal sentence enhancer; on February 9, 2006, Judge Rudolph T. Randa of this district authorized the transfer of the petitioner's supervised release (which began on April 29, 2005[3] and was to end on April 28, 2010) from the Central District to this district. Id. at Dkt. No. 1. On July 1, 2008, Judge Randa revoked the petitioner's supervised release and sentenced him to serve sixty months in custody consecutive to a state court sentence imposed in Case No. 2007CF4850. Id. at Dkt. Nos. 13, 14. The petitioner

---

[3] The Bureau of Prisons web site shows that the petitioner was released from custody on April 29, 2005. https://www.bop.gov/inmateloc/ (Steven L. Woods, Register Number 09222-026).

4

appealed, id. at dkt. no. 15, and the Seventh Circuit affirmed, id. at dkt. no. 25.

The public docket for Milwaukee County Circuit Court case State v. Stephen L. Woods,[4] 2007CF4850 (available at https://wcca.wicourts.gov) shows that on January 15, 2008, the petitioner pled guilty to one count of possession of cocaine with intent to deliver (less than 5-15 grams), one count of possession of cocaine with intent to deliver (more than 1-5 grams) and possession of marijuana with intent to deliver (less than 200-1000 grams). Id. On March 19, 2008, the state court sentenced the defendant to serve ten years (with 171 days credit) on the first count, with an initial term of confinement of five years and five years of extended supervision; five years on the second count, with an initial term of confinement of two years and three years of extended supervision; and four years on the fourth count, with an initial term of confinement of two years and two years of extended supervision. Id. The court ordered all three sentences to run concurrently with each other for a total of five years of initial confinement, but to run consecutively to any other sentence. Id.

The PACER system records from the Central District of Illinois show that in January 1995, the petitioner filed a motion under 28 U.S.C. §2255 to vacate, set aside or correct his sentence. Woods v. United States, Case No. 95-cv-2012-HAB (C.D. Ill.). The records show that the sentence the petitioner sought to set

---

[4] The defendant's first name is spelled "Stephen" in the state case, while he spells it "Steven" in this *habeas* proceeding.

5

aside was the one imposed in Central District of Illinois in Case No. CR91-20039. https://ecf.ilcd.uscourts.gov/cgi-bin/DktRpt.pl?204183590681294-L_1_0-1. Because of the age of the case, the full records for that petition are not available electronically.

B.    The Petitioner's Arguments

The petition states two grounds for relief: (1) he is "innocent of the sentence enhancement under the armed career criminal act" and (2) his sentence exceeds the maximum sentence allowed by law. Case No. 20-cv-662, Dkt. No. 1 at 10. The petitioner explains that to enhance his sentence under the Armed Career Criminal Act, the government relied on two Illinois robberies and one Wisconsin burglary. He asserts that because of a change in the law, the Wisconsin burglary no longer qualifies as the kind of violent felony that the government could use to enhance his sentence. Id. As to the length of his sentence, the petitioner claims that while the "maximum sentence is [ten] years followed by [two] years of supervised release," he received a sentence of "[fifteen] years followed by [five] years [of] supervised release." Id. at 10-11. He asks the court to vacate his sentence and release him from federal custody. Id. at 12.

In his brief, the petitioner argues that the savings clause of 28 U.S.C. §2255 allows him to bring a 28 U.S.C. §2241 petition. Dkt. No. 2 at 1-3. He states that he (1) had "no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first post conviction motion," (2) "the change was made

6

retroactive by the supreme court," and (3) "the change eludes permission for successive post conviction motions." Id. at 1 (citing In re Davenport, 147 F.3d 605 (1998)). The petitioner asserts that his "direct appeal and first 2255 motion [were] inadequate or ineffective as binding circuit precedent foreclosed the claim that burglary was not a violent felony." Id. at 1 (citing U.S. v. Dombrowski, 877 F.2d 520 (7th Cir. 1989)). He says that in "Beason, 926 F.3d, at 936,"[5] "[t]he court explained that 'if it would have been futile for a petitioner to raise these arguments in his 2255 motion because the law was squarely against him then the savings clause applies and a petitioner may proceed and pursue resentencing under 2241.'" Id. at 2.

The petitioner asserts that given the United States Supreme Court's decision in Reed v. Mathis, ___ U.S. ___, 136 S. Ct. 2243 (2016), his "Illinois and Wisconsin burglaries no longer qualify as violent felony predicates under the armed career criminal act. This leaves [the petitioner] with only 2 violent felony predicates making [the petitioner] ineligible for sentence enhancement under the armed career criminal act." Id. at 2-3 (citing Mathis, 136 S. Ct. at 2250). He argues that (1) Mathis applies retroactively, id. at 2 (citing Chazen v. Marske, 938 F.3d 851[6] (7th Cir. 2019)); (2) the Seventh Circuit relied on Mathis to conclude that "the Illinois burglary statute covers more conduct than generic burglary and can not qualify as a violent felony predicate under the armed

---

[5] Beason v. Marske, 926 F.3d 932 (7th Cir. 2019).

[6] The petitioner says the page cite for Chazen is 638, dkt. no. 2 at 2; it is actually 851.

career criminal act," id. (citing United States v. Haney, 840 F.3d 472 (7th Cir. 2016)); (3) the Seventh Circuit relied on Mathis to conclude that "the Wisconsin burglary statute covers more conduct than generic burglary and can not qualify as a violent felony predicated under the armed career criminal act," id. (citing United States v. Franklin, 895 F.3d 954 (7th Cir. 2019)); and (4) the Seventh Circuit "has addressed Mathis claims in 2241 proceedings" and "[i]n each case the court ruled that inmates are entitled to seek federal habeas corpus relief to challenge their sentence under the armed career criminal act," id. at 3 (citing Beason, 926 F.3d 932; Chazen, 938 F.3d 851).

The petitioner contends that his

> [i]nstant offense was committed on June 13, 1990, however [the petitioner] was not arrested until August 21, 1991. During this time [the petitioner] was charged with a drug crime on July 27, 1990 and later convicted.

Id. at 3. He states that "[t]his is not a prior conviction the government can use as a substitution and claim harmless error. The drug offense was committed after the instant 922(g) offense." Id. The petitioner says that because he has only two qualifying convictions under the Armed Career Criminal Act, his sentence should be vacated. Id. He asserts that the Seventh Circuit has held that a defendant "sentence in error as an armed career criminal satisfies the miscarriage of justice requirement." Id. (citing Light v. Caraway, 761 F.3d 809, 813 (7th Cir. 2014)). He asks the court to "vacate [his] sentence and release him from federal custody." Id. at 12.

8

C.     Standard

Under Rule 1(b) of the Rules Governing Section 2254 Cases and Civil Local Rule 9(a)(2) of the Local Rules for the Eastern District of Wisconsin, the court applies the Rules Governing Section 2254 Cases to petitions for a writ of *habeas corpus* under 28 U.S.C. §2241. Chagala v. Beth, No. 15-CV-531, 2015 WL 2345613, at *1 (E.D. Wis. May 15, 2015). Those rules require the court to review, or "screen" the petition. Rule 4 of the Rules Governing Section 2254 Cases provides:

> If it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion or other response within a fixed time, or to take other action the judge may order.

A court must allow a *habeas* petition to proceed unless it is clear that the petitioner is not entitled to relief in the district court. At the screening stage, the court expresses no view as to the merits of any of the petitioner's claims. Instead, the court considers whether the petitioner has stated cognizable grounds for federal habeas relief and whether the petitioner has exhausted his state court remedies.

D.     Analysis

1.     *Federal Jurisdiction*

The petitioner did not provide the court with much information about the way his various cases and sentences relate to each other, which raises a question about why he believes that he is in federal custody on the sentence imposed in the Central District of Illinois in the 1991 case. The petitioner is in

9

a *state* prison—Redgranite Correctional Institution. He appears to have finished serving the fifteen-year sentence imposed in the Central District of Illinois—the sentence he challenges here—in April 2005; the federal Bureau of Prisons indicates that is when he was released from federal custody and the transfer of jurisdiction form that transferred his supervised release from the Central District of Illinois to the Eastern District of Wisconsin shows that he began serving his supervised release term in April 2005. In July 2008—twelve and a half years ago—Judge Randa revoked the petitioner's supervised release and sentenced him to serve five years consecutive to the five-year sentence imposed by the Milwaukee County Circuit Court. Basic math indicates that a year or two ago, the petitioner should have finished serving the five-year state sentence imposed in Case No. 2007CF4850 *and* the five-year revocation sentence Judge Randa imposed in Case No. 96-cr-662.

The petitioner does have another state conviction. In <u>State v. Stephen L. Woods</u>, Case No. 2008CF4747 (Milwaukee County Circuit Court) (available at https://wcca.wicourts.gov), the defendant was charged with armed robbery with the threat of force. The complaint was filed on September 25, 2008—two months *after* Judge Randa revoked the petitioner's supervised release and sentenced him to serve five years consecutive to the sentence in Milwaukee County Circuit Court Case No. 2007CF4850. The petitioner had a jury trial September 14-16, 2009; the jury returned a guilty verdict. <u>Id.</u> On November 19, 2009, the court sentenced the petitioner to an initial confinement term of ten

years consecutive to any other sentence, followed by five years of extended supervision. Id.

The court strongly suspects that the petitioner has finished serving his federal sentences—both the fifteen-year sentence imposed in the Central District of Illinois and the five-year revocation sentence Judge Randa imposed—and that currently he is serving the 2009 ten-year, state-court-imposed sentence for armed robbery. If that is the case, this court has no jurisdiction over his §2241 petition. Section 2241 "requires that a petitioner be in custody under the sentence giving rise to his claimed injury at the time he filed suit, in order for federal jurisdiction to exist." Wilkins v. Madigan, 250 F. App'x 747, 749 (7th Cir. 2007) (citing Samirah v. O'Connell, 335 F.3d 545, 549 (7th Cir. 2003)). If, on the date he filed this §2241 petition (April 27, 2020), the petitioner was not in federal custody under the fifteen-year sentence the Central District of Illinois imposed under the Armed Career Criminal Act, this court does not have jurisdiction to decide the issues he raises.

Though it seems unlikely that this court has jurisdiction, the court cannot be sure without more information. The court will screen the petitioner's substantive claims in an abundance of caution.

### 2. *Sections 2255 and 2241*

Typically, a federal prisoner challenges his federal sentence by filing a motion under 28 U.S.C. §2255 in the district of conviction; that section allows a prisoner serving a federal sentence to "move the court which imposed the sentence to vacate, set aside or correct the sentence." Chazen, 938 F.3d at 856;

11

28 U.S.C. §2255(a). "In the great majority of cases," §2255 is the "exclusive postconviction remedy for a federal prisoner." Purkey v. United States, 964 F.3d 603, 611 (7th Cir. 2020). Strict procedures dictate the way in which a petitioner must bring such a motion. Id. A one-year statute of limitations runs from one of four dates:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f).

The court has noted that the petitioner appears to have filed a §2255 motion in the Central District of Illinois in 1995. "Section 2255 gives a federal prisoner one opportunity to challenge a conviction and sentence following a direct appeal." Suggs v. U.S., 705 F.3d 279, 281-82 (7th Cir. 2013) (citing 28 U.S.C. §2255(a)). Sections 2244(a) and 2255(h) "sharply restrict a 'second or successive' motion to narrow circumstances." Suggs, 705 F.3d at 281. "If a prisoner seeks to challenge his conviction or sentence a second time, he must persuade a court of appeals to certify the motion and authorize the district court to hear it." Id. at 282 (citing 28 U.S.C. §§2244(a)-(b), 2255(h)). Section

2255(h) permits the "appropriate court of appeals" to certify a "second or successive motion" if the motion (1) contains "newly discovered evidence" showing innocence, or (2) cites "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. §2255(h). Without authorization from a federal Court of Appeals, a district court has no jurisdiction to hear a second or successive petition. Suggs, 705 F.3d at 282.

There is another exception to the rule that a petitioner may file only one §2255 challenge to his conviction—28 U.S.C. §2255(e), "better known as 'the savings clause.'"[7] Bourgeois v. Watson, No. 20-1891, 2020 WL 5905326, at *8 (7th Cir. Oct. 6, 2020). That subsection provides that

> [a]n application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. §2255(e). "A prisoner who qualifies for this 'narrow pathway' to relief may file a petition under 28 U.S.C. §2241, the general habeas corpus statute," in the district of incarceration. Bourgeois, 2020 WL 5905326 at *8 (citing Purkey, 964 F.3d at 611); Chazen, 938 F.3d at 856. The savings clause "permits a federal prisoner who has already moved for relief under §2255 to file

---

[7] Other decisions refer to this provision as the "safety valve," see, *e.g.*, Purkey, 964 F.3d at 611, or the "escape hatch," Davenport, 147 F.3d at 610.

a habeas corpus petition under §2241 if §2255 was 'inadequate or ineffective to test the legality of his detention.'" Id. at *4 (quoting 28 U.S.C. §2255(e)).

"The savings clause is not simply another avenue for appeal." Id. at *11. "[T]he savings clause affords relief in limited circumstances to federal prisoners who rely on retroactive statutory-interpretation cases that postdate their §2255 motions." Id. at *12. It "is a narrow route to relief that exists only to prevent fundamental errors that §2255 could not have corrected" and "does not invite federal prisoners to relitigate their claims every time the Supreme Court refines the relevant legal standard." Id. at *13. The question is not whether a petitioner seeking relief under the savings clause asserts a claim that has merit, but whether that petitioner was able to litigate that claim in a §2255 motion. Id.

When considering a §2241 petition based on the savings clause, the court's "only role is to determine whether there was something 'structurally inadequate or ineffective about section 2255 as a vehicle.'" Id. at *11. "[T]he words 'inadequate or ineffective,' taken in context, must mean something more than unsuccessful." Id. (quoting Purkey, 964 F.3d at 615). For example, §2255 is not structurally inadequate or ineffective as a vehicle to litigate an ineffective assistance of trial counsel claim or a Brady[8] claim. See, e.g., Lee v. Watson, 964 F.3d 663, 667 (7th Cir. 2020), cert. denied, ___ U.S. ___, 141 S. Ct. 195 (Mem.) (July 14, 2020). A §2255 motion is inadequate, however, "to obtain relief on a basis not yet established by law." Davenport, 147 F.3d at 610. "A federal prisoner should be permitted to seek habeas corpus only if he had no

---

[8] Brady v. Maryland, 373 U.S. 83 (1963).

reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." Id. at 611.

The petitioner challenges the Central District of Illinois' enhancement of his sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. §924(e). The ACCA imposes a mandatory minimum fifteen-year sentence on "certain federal defendants" who have "three prior convictions for a 'violent felony.'" Mathis, 136 S. Ct. at 2247 (citing 18 U.S.C. §924(e)). Under the ACCA, a "violent felony" is "any federal or state felony that 'has as an element the use, attempted use, or threatened use of physical force against the person of another' (the elements clause) or is 'burglary, arson, or extortion' (the enumerated offenses clause)." Chazen, 938 F.3d at 853 (quoting 18 U.S.C. §924(e)(2)(B)(i)-(ii)).

In Mathis—decided in 2016—the Supreme Court "narrowed the range of state statutes that qualify as violent felony predicates under the Armed Career Criminal Act." Chazen, 938 F.3d at 855 (citing Mathis, 136 S. Ct. 2243). Mathis resolved a circuit split over the test controlling which prior state convictions qualify as such a predicate offense. Mathis, 136 S. Ct. at 2247-48; 18 U.S.C. §924(e). The Court held that one of two approaches governs—either the "categorical approach" or the "modified categorical approach." Mathis, 136 S. Ct. at 2247-48.

Under the "categorical approach," a court looks "only to the statutory definitions of the prior offenses, and not to the particular facts underlying

15

those convictions.'" Chazen, 938 F.3d at 857 (quoting Taylor v. United States, 495 U.S. 575, 598 (1990)). "If the statute under which a defendant was previously convicted 'substantially corresponds' to or is narrower than *Taylor*'s generic definition, the conviction qualifies as a violent felony under the Act." Id. (citing Taylor, 495 U.S. at 602). "Put another way, '[a] crime counts as "burglary" under the Act if its *elements* are the same as, or narrower than, those of the generic offense.'" Id. (quoting Mathis, 136 S. Ct. at 2248). If, however, "'the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an [Armed Career Criminal Act] predicate, even if the defendant actually committed the offense in its generic form.'" Id. (quoting Descamps v. United States, 570 U.S. 254, 261 (2013)).

The "modified categorical approach" permits "sentencing courts . . . to look beyond the statute of conviction to determine whether a prior conviction meets" the generic definition of burglary. Id. (citing Taylor, 495 U.S. at 602). Under the modified categorical approach, "a sentencing court may 'consult a limited class of documents, such as indictments or jury instructions, to determine which alternative formed the basis of the defendant's prior conviction,'" id. (quoting Descamps, 570 U.S. at 257), "'but only for the limited purpose of determining whether the elements of the crime of conviction match (or are narrower than) the elements of the generic offense," id. (quoting Van Cannon v. United States, 890 F.3d 656, 663 (7th Cir. 2018)).

Whether the categorical approach or the modified categorical approach applies depends on whether the statute underlying the conviction is divisible.

"If a statute is divisible—meaning it 'sets out one or more elements of the offense in the alternative'—courts may apply the so-called 'modified categorical approach.'" Id. (quoting Descamps, 570 U.S. at 257). Where a statute "does not contain alternative elements, but rather 'a single, indivisible set of elements sweeping more broadly than the corresponding generic offense,'" a statute is indivisible. Id. (quoting Descamps, 570 U.S. at 260) (some quotation omitted). To be clear, "the modified categorical approach applies only to divisible statutes." Id.

Mathis clarified that "the modified categorical approach is unavailable" when a statute merely provides multiple *means* to satisfy a single *element*. Id. at 858 (citing Mathis, 136 S. Ct. at 2253). Under Mathis, if "any of the alternative *means* of satisfying a statutory *element*" of a crime of conviction is broader than the ACCA's generic version of that crime, "the conviction cannot qualify as a predicate" under the ACCA. Id. at 859 (citing Mathis, 136 S. Ct. at 2248) (emphasis added). A prior conviction for a crime counts as a conviction for the ACCA's generic version of that crime "only if its elements—not the means of satisfying the elements—are the same as or narrower than the generic definition of" that crime. Id. (citing Mathis, 136 S. Ct. at 2256).

In Chazen, a federal prisoner relied on Mathis and the savings clause of §2255 to pursue *habeas* relief under §2241. Chazen, 938 F.3d at 853, 855. "A federal jury in Minnesota convicted Chazen of possessing a firearm following a prior felony conviction." Id. at 853. Because Chazen had "five felony convictions under Minnesota law," including "two convictions for second-degree burglary,"

17

the district court imposed the ACCA's fifteen-year mandatory minimum. Id. Chazen sought relief through a direct appeal and a §2255 motion; after both proved unsuccessful, he filed a §2241 petition in the district of incarceration— the Western District of Wisconsin—arguing that under Mathis, "he no longer qualifie[d] as an armed career criminal and [wa]s entitled to a lesser sentence." Id.

The Seventh Circuit described the three-part test to determine whether a petitioner satisfies the savings clause of §2255(e); the petitioner must show that "(1) the claim relies on a statutory interpretation case, not a constitutional case, and thus could not have been invoked by a successive §2255 motion; (2) the petitioner could not have invoked the decision in his first §2255 motion and the decision applies retroactively; and (3) the error is grave enough to be deemed a miscarriage of justice." Id. at 856. (citing Beason, 926 F.3d at 935). The court noted that all the parties agreed that Chazen satisfied the first and third prongs of the test; it found that on the first prong, he relied on the Supreme Court's decision in Mathis, which interpreted the ACCA, to argue "that his Minnesota burglary convictions no longer qualif[ied] as violent felonies." Id. On the third prong, the court noted that "a defendant sentenced in error as an armed career criminal satisfies the 'miscarriage of justice' requirement." Id. (citing Light, 761 F.3d at 813).

The government argued, however, that Chazen failed on the second prong, contending that his claim did not "rely on a 'new retroactive rule.'" Id. at

18

861 (internal citation omitted). As the court explained the government's

argument:

> In [the government's] view, because *Mathis* did not announce a substantive change in the law, but rather clarified the circumstances under the Armed Career Criminal Act in which a sentencing court may apply the modified categorical approach, Chazen could have raised his arguments about Minnesota's burglary statute in his initial §2255 petition by relying on pre-*Mathis* Supreme Court decisions . . . As the government sees it, then, because Chazen was not foreclosed from raising these arguments in his initial collateral attack, he cannot now bring his claims under §2241.

Id.

The court noted that (1) at the district court level, the government had

conceded that Mathis applied retroactively and (2) that its precedents "likewise

suggested" the retroactive application of Mathis. Id. at 861 (citing Holt v.

United States, 843 F.3d 720, 722 (7th Cir. 2016) ("[S]ubstantive decision such

as Mathis presumptively apply retroactively on collateral review."). Granting

that it had "not been consistent in [its] articulation of the second requirement

of the savings-clause test," however, the court discussed its "various

formulations of this inquiry." Id. at 861-62.

The court observed that at the time Chazen filed his first motion for

postconviction relief under §2255, "the law was squarely against" him. Id. at

862. "[A]t the time of Chazen's §2255 motion in 2013, his claim for relief was

foreclosed by Eighth Circuit precedent concluding that Minnesota burglary

qualified as a violent felony for federal sentencing purposes." Id. (citing United

States v. LeGrand, 468 F.3d 1077 (8th Cir. 2006)). The court concluded that

19

<u>Mathis</u> "provide[d] the basis for Chazen's §2241 petition." <u>Id.</u> As the court explained:

> While our caselaw is not a model of clarity with respect to whether a petitioner must rely on a "new rule," the thrust of our precedent has focused on whether an intervening case of statutory interpretation opens the door to a previously foreclosed claim. *Mathis* fits the bill. *Mathis* injected much-needed clarity and direction into the law under the Armed Career Criminal Act: before *Mathis*, the Eighth Circuit had held that Minnesota burglary was a violent felony and it applied the modified categorical approach regardless of whether a statute listed distinct elements or alternative means. See*, e.g.*, *Mathis*, 786 F.3d at 1075. It is only after *Mathis*— a case decided after Chazen's §2255 petition that the government concedes is retroactive—that courts, including our court and the Eighth Circuit, have concluded that Minnesota burglary is indivisible because it lists alternative means of committing a single crime. See *Van Cannon*, 890 F.3d at 664; *McArthur*, 850 F.3d at 938.

<u>Id.</u> The court stated that "[i]n this way, *Mathis* is 'new' as a functional and practical matter for federal inmates seeking relief from a mandatory minimum sentence under the Act. This is particularly true for those petitioners, like Chazen, who were convicted in the Eighth Circuit, whose interpretation of 'divisibility' was overruled by *Mathis*." <u>Id.</u> The court concluded:

> Before *Mathis* it would have been futile for Chazen to argue that his Minnesota burglary convictions did not qualify as violent felonies. It was only after the Supreme Court decided *Mathis* that Chazen had any daylight to seek relief by raising the claim embodied in his §2241 petition. In these circumstances, where the government has conceded that *Mathis* is retroactive and Chazen was so clearly foreclosed by the law of his circuit of conviction at the time of his original §2255 petition, we conclude that Chazen has done enough to satisfy the savings clause requirements. This conclusion finds support in our prior observation that "[a]n independent claim based on <u>*Mathis*</u> must be brought, if at all, in a petition under 28 U.S.C. §2241." *Dawkins v. United States*, 829 F.3d 549, 551 (7th Cir. 2016). And in light of our prior decision in *Van Cannon*, it is clear that Chazen's two Minnesota burglary convictions no longer qualify as predicates under §924(e).

Id. at 863. The court affirmed the district court's judgment granting *habeas* relief under §2241. Id.

In United States v. Haney, 840 F.3d 472 (7th Cir. 2016), a case decided four months after the Supreme Court decided Mathis, the Seventh Circuit concluded that a petitioner's prior Illinois burglary convictions were "not violent felonies under the ACCA." Haney, 840 F.3d at 475. The court reasoned that (1) when Haney "was twice convicted of burglary in the early 1970s, the relevant statute applied not only to buildings but also to vehicles, such as 'housetrailer[s], watercraft, aircraft, motor vehicle[s] . . . [and] railroad car[s],'" id.; (2) "like the Iowa statute in *Mathis*, Haney's statute of conviction is broader than generic burglary," id. (citing Mathis, 136 S. Ct. at 2250-51); and (3) "the locations described in the older versions of the statute appear to represent 'multiple means of fulfilling its locational element'—unlike the contemporary burglary statute, which impose[d] different penalties depending on the location in which the burglary occur[red], constituting separate elements that could render the statute divisible and subject to the modified-categorical approach," id. (citing Mathis, 136 S. Ct. at 2250) (other citation omitted).

In United States v. Franklin, 772 F. App'x. 366 (7th Cir. 2019), the Seventh Circuit held that a conviction for burglary under Wis. Stat. §943.10(1m) did not qualify as a prior conviction for a violent felony under the ACCA, reasoning that because "[b]urglary under Wisconsin law, Wis. Stat § 943.10(1m), applie[d] to burglaries of vehicles as well as buildings and dwellings," "the state crime [was] broader than the federal generic crime of

21

burglary that may serve as a predicate for enhanced offenses under the [ACCA]." Id. at 366-67 (citing Mathis, 136 S. Ct.). The court noted that "[i]n response to [its] request, the Supreme Court of Wisconsin ha[d] decided definitively that the state crime [was] not 'divisible' among different locations for purposes of applying the [ACCA]." Id. at 367.

It is not clear whether the savings clause of §2255 allows the petitioner to challenge the application of the ACCA to enhance his sentence through a §2241 petition. As the court noted, the petitioner did not provide the court with the particulars of his Central District of Illinois conviction. The court has not had the opportunity, for example, to review the judgment of conviction, the 1995 §2255 motion or the sentencing information relied on by the Central District of Illinois (including the statutes of conviction for the prior offenses the court used as predicates). Without this information, the court cannot say that it plainly appears that the petitioner is not entitled to *habeas* relief in the district court—*if*, as the court has discussed, it has jurisdiction.

If the petitioner pays the filing fee, the court will order the respondent to answer or otherwise respond.

## III.  Request for Appointment of Counsel (Dkt. No. 5)

The petitioner's motion for appointed counsel states that (1) he has attempted to get counsel of his own without success, (2) he is indigent and cannot pay an attorney, and (3) if the government that opposes his petition and the court orders him to file a brief, he cannot do so. Dkt. No. 5 at 1. He attached a letter from one lawyer declining to take his case. Id. at 2.

22

There is no statutory or constitutional right to court-appointed counsel in federal civil litigation. Giles v. Godinez, 914 F.3d 1040, 1052 (7th Cir. 2019). This is particularly true in *habeas* cases. The Seventh Circuit has held that "[a] litigant is not entitled to appointed counsel in a federal postconviction proceeding," although it notes that a district court "may appoint counsel if 'the interests of justice so require.'" Taylor v. Knight, 223 F. App'x 503, 504 (7th Cir. 2007) (citations omitted) (quoting 18 U.S.C. §3006A(a)(2)(B)).

When evaluating a motion to appoint counsel, the district court engages in a two-step process. Giles, 914 F.3d at 1052. First, the court determines whether the plaintiff "made a reasonable attempt to secure counsel on his own." Id. at 1053 (citing Navejar v. Iyiola, 718 F.3d 692, 696 (7th Cir. 2013)). Second, the court determines "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a lay person to coherently present it." Pruitt v. Mote, 503 F.3d 647, 655 (7th Cir. 2007).

Even if the court concluded that the petitioner had made a reasonable attempt to find a lawyer on his own—and the court usually requires a party to have contacted at least three lawyers before reaching that conclusion—the court would not appoint counsel at this stage. The petitioner has presented enough information for the court to screen his petition. The next step is for the petitioner to pay the filing fee. If he does, the court then will require the respondent to answer or otherwise respond. The court has serious questions about whether it has jurisdiction to rule on the petition and it needs to resolve those concerns before anything else can happen in the case. If the court

23

concludes that it does have jurisdiction and the case proceeds further, the petitioner may renew his request for the appointment of counsel.

## IV. Conclusion

The court **DENIES** the petitioner's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **ORDERS** that by the end of the day on **March 26, 2021**, the petitioner either must pay the $5.00 filing fee or must file a motion asking the court to authorize his institution to pay the fee from his release account. The court **ORDERS** that the petitioner must either pay the fee or file the motion in time for the court to *receive* it by the end of the day on Friday, March 26, 2021. If the court does not receive either the filing fee or a motion for leave to pay the fee from the release account by the end of the day on March 26, 2021, the court will dismiss this case for failure to pay the filing fee. If the court receives the filing fee, it will order the respondent to answer or otherwise respond.

The court **DENIES WITHOUT PREJUDICE** the petitioner's request for appointment of counsel. Dkt. No. 5.

The court **DIRECTS** the Clerk of Court to update the docket to reflect that Dan Cromwell is the correct respondent.

Dated in Milwaukee, Wisconsin this 26th day of February, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

24